Barbara DENEEN,
Plaintiff-Appellee-Cross-Appellant,

v.

NEW ENGLAND MUTUAL LIFE
INSURANCE CO.,
Defendant-Appellant-Cross-Appellee.

Nos. 77–1659, 77–1660.

United States Court of Appeals,
Sixth Circuit.

Submitted Dec. 13, 1979.

Decided Feb. 20, 1980.

Edward B. Harrison, Fischer, Franklin & Ford, Detroit, Mich., for defendant-appellant-cross-appellee.

David K. Barnes, Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P. C., Detroit, Mich., for plaintiff-appellee-cross-appellant.

Before LIVELY and BOYCE F. MARTIN, Jr., Circuit Judges, and PHILLIPS, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

This case stems from an action to recover accidental death benefits under two life insurance policies issued to Richard E. Deneen, deceased. Plaintiff is the insurance beneficiary, Deneen's widow. The policies contained supplemental benefits provisions totaling $30,000.00 in the event of accidental death. Defendant New England Mutual Life Insurance Company paid the ordinary life insurance benefits under both policies.

On October 31, 1974, plaintiff filed suit in Michigan State Court to recover the accidental death benefits. Defendant removed the action to district court on diversity grounds. After trial, the jury returned a verdict awarding plaintiff the full $30,000.00. The district judge ordered defendant to pay interest on the judgment at the rate of six percent per annum beginning on the date suit was filed.

This appeal presents three issues. First, defendant appeals from the denial of its pretrial motion to disinter the insured's body. Second, plaintiff contends that interest on the judgment should be paid from the date of death rather than from the date suit was filed. Third, defendant argues that the rate of interest should not exceed the two and one-half percent minimum specified in the policies.

The insured died on May 8, 1973, when the automobile he was driving left the road and struck a tree. Edwin B. Sparkman, a local police officer, arrived at the scene shortly after the accident occurred and gave the following account. Deneen was traveling alone in the car on a two-lane wet pavement when he left the road. Before striking the tree, he had gone 149 feet with the right side of the vehicle on the dirt shoulder and the left side on the pavement. The tree was five to fix feet from the edge of the road. Richard Rumball, who was driving behind Deneen's vehicle, witnessed the accident. He indicated that the insured was traveling 35–40 miles per hour and drifted off the road gradually, not veering sharply into the tree. Rumball did not observe an attempt by Deneen to brake the car and saw no rear vehicle lights. There were no skid marks. The accident report noted that the insured had a history of heart problems, but Deputy Sparkman could not subsequently remember who gave him that information.

Dr. Charles Woodruff, an assistant Oakland County, Michigan, medical examiner, conducted an autopsy several hours after the insured's death. He reported the immediate cause of death to be cardiac tamponade due to myocardial rupture with an underlying cause of arteriosclerotic heart disease. The manner of death was listed as "natural." Dr. Woodruff apparently based his opinion on a report, the source of which is uncertain, that the insured had a history of heart problems and that an eyewitness had seen him slumped over the steering wheel immediately before impact.

Almost two years later, Dr. Woodruff amended the death certificate. He had discovered that the "history of heart problems" and "eyewitness report" were false. He still felt that the immediate cause of death was cardiac tamponade but changed the underlying cause from arteriosclerotic heart disease to "compression of chest." He then designated the manner of death as "accidental" rather than "natural." Dr. Woodruff filed the amended certificate on March 14, 1975.

This amended certificate prompted defendant's motion for disinterment. De-

fendant contends that a new autopsy would provide an opportunity to show that the insured died as a result of a "disease or infirmity." Such proof would relieve defendant from liability under the policies' accidental death clause, which precludes benefits for death which, although accidental, "results directly or indirectly, wholly or partly from any disease or infirmity." The policies gave the insurer the "right and opportunity to examine the body and make an autopsy."

Both plaintiff and defendant rely on *McCulloch v. Mutual Life Insurance Company of New York*, 109 F.2d 866 (4th Cir. 1940), to support their positions on the motion for disinterment. The trial court agreed that *McCulloch* states the controlling principles of law on this issue and based its denial of the motion on an analysis of that case.

■ *McCulloch* established the following standard for permitting post-burial autopsies:

> [I]t is safe to say that two conditions at least must concur to justify an autopsy after burial. It must appear that through no fault of the insurer it was impracticable to demand and perform the autopsy before interment, and secondly, it must be reasonably certain that an examination of the body will reveal something bearing on the rights of the parties which could not otherwise be discovered.
>
> . . .

*McCulloch, supra* at 869. Under this two-pronged test, the district court found that defendant's motion was timely but failed to meet the second requirement of "reasonable certainty." We agree.

Defendant attempts to broaden the scope of the *McCulloch* standard by isolating and emphasizing the language that an autopsy should reveal "something bearing on the rights of the parties." Defendant asks us to apply that phrase literally. This interpretation, however, is unsupported either by reason or by subsequent discussion in *McCulloch* itself. One way or another, an autopsy necessarily affects the interests of the parties in an accidental death benefits case. If we accept defendant's "test," then the automatic approval of all requests for disinterment would be required. Such a result would be inconsistent with the Fourth Circuit's observation in *McCulloch, supra* at 870–871, that:

> [I]f one falls down a flight of stairs, fractures his skull and dies in eight minutes, his death may possibly have been caused wholly or partly by disease. The possibility alone may furnish support for a guess or a conjecture, but it does not amount to proof . . . no evidence whatever was produced to show that the insured was afflicted with disease at the time of the accident. The only fair inference is that the insurer has no basis for its assertion that disease was a contributing cause of death, but only a hope that in the course of the investigation something may be revealed that will relieve it from the double liability.

The strongest evidence defendant produced in support of its motion was the testimony of Dr. Gikas, who stated:

> So one can't form an opinion as to whether a stroke did or did not occur. One can only say a stroke could have caused this crash. Whether it occurred or not, I haven't the foggiest idea. But one has to ask that question.

We find the purely speculative nature of this testimony, unsupported by evidence from the insured's medical history, inadequate to overcome the strong public policy against disinterment. Accordingly, we affirm the district court's order denying defendant's motion.

We next turn to the issue of the date interest became payable on the judgment against defendant. Plaintiff contends that interest should run from the date of the insured's death, the time at which the policies matured.

■ The policy provisions themselves govern our determination. Michigan law requires us to interpret them according to ordinary usage, avoiding forced or strained meanings. *Sump v. St. Paul Fire and Marine Insurance Company*, 21 Mich.App. 160,

175 N.W.2d 44 (1970). The "Proceeds" clause states:

> The proceeds payable at maturity by death . . . shall be the face amount, increased by any additions . . and shall be paid in accordance with the beneficiary provisions . . . Interest at not less than two and one-half per cent per annum on the proceeds shall be paid from the date of maturity to the date of payment if the proceeds are to be paid in one sum . . . .

Thus, in general, interest is payable from maturity, which is the date of death. Moreover, the term "proceeds" specifically includes "any additions" to payment of the face amount. Accidental death benefits under the policy fall within the category of "additions" because "[t]he amounts payable hereunder shall be in addition to any other amount payable under the Policy and shall become a part of the Policy Proceeds." We therefore find that accidental death benefits are subject to the same interest provision that governs payment of the face amount of the policy.

Defendant's insistence that no interest is due until the beneficiary submitted proof of accidental death is without merit. Proof of the accidental death merely establishes the fact of defendant's liability for supplemental benefits, it does not determine the effective date of that liability. Defendant's reliance on *Whitney v. Allstate Insurance Company*, 66 Mich.App. 74, 238 N.W.2d 410 (1975), is misplaced. That case involved a policy which did not authorize payment of interest at all. In contrast to the present situation, the *Whitney* court had to base its decision on common law concepts, not on the terms of the contract itself. Accordingly, we hold that interest on the judgment began to accrue on May 8, 1973, the date the insured died.

Finally, we must determine the rate of interest. The policies themselves specify only that the interest rate will not be less than two and one-half percent. We must therefore apply the legal rate under Michigan laws which is five percent to the period beginning May 8, 1973, and running

through October 30, 1974. *Feiler v. Midway Sales, Inc.*, 363 Mich. 105, 108 N.W.2d 884 (1961).

Beginning October 31, 1974, however, the trial court awarded interest at the rate of six percent. That award was in compliance with Michigan law, and we do not disturb it here. Mich.Comp.Laws Ann. § 600.6013.

The judgment of the district court is affirmed except insofar as the amount of interest which is increased as indicated.