790 F.2d 475
 Ann Marie CROBONS, Individually; Ann Marie Crobons,
Personal Representative of Gene Crobons, Deceased,
a/k/a Eugene J. Crobons,
Plaintiff-Appellee, Cross- Appellant,
v.
WISCONSIN NATIONAL LIFE INSURANCE COMPANY,
Defendant-Appellant, Cross-Appellee,
Marvin K. Wyant, et al., Defendants, Cross-Appellees.
 Nos. 84-1876, 85-1043.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 2, 1985.
Decided May 7, 1986.
 
 David G. Barnett (argued), Bloomfield Hills, Mich., for defendant-appellant, cross-appellee.
 Jack C. Radcliffe (argued), William J. Braaksma (Wyant), Jackson, Mich., for plaintiff-appellee, cross-appellant.
 Before ENGEL and KEITH, Circuit Judges, and UNTHANK*, District Judge.
 KEITH, Circuit Judge.
 
 
 1
 This is a cross appeal from a district court order, 594 F.Supp. 379, denying the defendant's motions for summary judgment and granting partial summary judgment to plaintiff. For the following reasons, we affirm.
 
 
 2
 The plaintiff, Anne Marie Crobons, brought this action to recover insurance policy proceeds from a policy on the life of Gene Crobons, her deceased husband. The defendant, Wisconsin National Life Insurance Company (Wisconsin National) issued the policy and paid the controverted proceeds to defendant Marvin Wyant, former business partner of Gene Crobons. Defendant Brian Wyant, Marvin Wyant's son, and an insurance agent, serviced the Wisconsin National policy on Gene Crobons' life.
 
 
 3
 Gene Crobons and Marvin Wyant allegedly entered an oral agreement to take out life insurance policies on each other's lives. In December 1981, Marvin Wyant purchased from Wisconsin National a $100,000 term life insurance policy on the life of Gene Crobons. Defendant Brian Wyant, Marvin Wyant's son and a Wisconsin National insurance agent, serviced the policy. In February 1982, Marvin Wyant and Gene Crobons designated plaintiff Marie Crobons as the primary beneficiary of the policy insuring Gene Crobons' life. The policy provided for change of beneficiary while Mr. Crobons was still living.
 
 
 4
 On September 3, 1982, Gene Crobons entered Foote Hospital in Jackson, Michigan. Hospital personnel diagnosed massive subarachnoid hemmorhage and placed Mr. Crobons on a life support system. The district court determined that Mr. Crobons' treating physician, Dr. Rawal, submitted unchallenged testimony that readings of Mr. Crobons' brain waves on September 13, 1982 confirmed the doctor's earlier conclusion that Mr. Crobons had suffered irreversible brain death. Dr. Rawal so informed Mrs. Crobons. A day earlier Dr. Rawal had written in his progress notes dated September 12th, that Mr. Crobons' neuro examination was "consistent with brain death". The doctor had no doubt his clinical examination meant Mr. Crobons' spontaneous brain functions had irreversibly ceased. However, because Dr. Rawal encountered reluctance by the family to accept Mr. Crobons' death, he awaited results of an EEG requested by Mrs. Crobons and the family's decision to disconnect life support before certifying Mr. Crobons as deceased. On September 15, 1982, Dr. Rawal certified Mr. Crobons' time of death as September 14, 1982 at 2:55 p.m.
 
 
 5
 During the interim between Dr. Rawal's September 12th notation of brain death and the certification of Mr. Crobons' death on September 15th, Marvin Wyant was fully aware of the deceased's comatose state and a report by Pat Vincent that Crobons had suffered brain death on September 11th. On September 13th, 1982, Marvin Wyant executed and Brian witnessed a change of beneficiary form which substituted Marvin Wyant as the principal beneficiary of the life insurance policy and left plaintiff as beneficiary in the then moot possibility of Mr. Crobons' accidental death.
 
 
 6
 The district court determined that Wisconsin National agent John Basinger knew about Crobons' comatose state before September 13th and was aware the Wyants were trying to change the policy beneficiary quickly. After conducting an investigation, Wisconsin National nonetheless determined the change of beneficiary form had been properly executed and paid Marvin Wyant the $100,000 in policy proceeds in November, 1982.
 
 
 7
 Plaintiff first learned of the policy and her former status as beneficiary in the summer of 1983. In November of 1983, plaintiff filed a constructive fraud and breach of contract action in Michigan Circuit Court, Jackson County. Plaintiff alleged in Count I of the complaint that Wisconsin National had breached its contractual duty to pay the proceeds of the policy to her, the designated beneficiary. The defendants removed the suit to federal district court based on diversity of citizenship and Wisconsin National and Brian Wyant moved for summary judgment.
 
 
 8
 The district court determined that even accepting defendants' contention that Marvin Wyant executed the change of beneficiary form the afternoon of September 12, 1982, the change was not completed prior to Gene Crobons' brain death. The court concluded that under the Michigan Death Act, Mich.Comp.Laws Ann. Sec. 333.1021 (1980), Gene Crobons died when his doctor observed and noted the "irreversible cessation of spontaneous brain functions." The court then determined that on September 12, 1982, Dr. Rawal first announced his opinion of "brain death" in his progress notes and informed Mrs. Crobons of the opinion one day later. The court concluded that since Mr. Crobons died at some point before execution of the change of beneficiary form, the date on the death certificate denoted only when life support was removed and therefore presented no genuine issue of material fact. Under such circumstances, the court concluded, Wisconsin National unreasonably relied upon the death certificate. The court denied defendants' motions for summary judgment and on its own motion granted summary judgment against Wisconsin National on Count I of the complaint.
 
 
 9
 In a supplemental order the district court amended its findings of fact and certified its summary judgment for interlocutory review under 28 U.S.C. Sec. 1292(b). Subsequently, in its order of December 4, 1984, the court certified its summary judgment on Count 1 as a final judgment under Fed.R.Civ.P. 54(b), finding no reason to delay entry of a final judgment on that count. Wisconsin National appeals and Ann Marie Crobons cross-appeals, seeking interest on the insurance policy proceeds from the date of death until the filing of the complaint. Brian Wyant's application for leave to appeal was denied by this court on February 18, 1985 (Case No. 85-8001).
 
 
 10
 Our review on appeal is limited to determining whether any issue of material fact precluded summary judgment. Mozert v. Hawkins County Public Schools, 765 F.2d 75, 78 (6th Cir.1985). The key issue before the district court was whether Mr. Crobons died before or after the Wyants executed the change of beneficiary form. The court entered summary judgment on Count 1 in favor of plaintiff[1] because the record showed Mr. Crobons suffered brain death prior to execution of the form. In the district court's view, this fact negated the presumptive validity of the later time of death noted on the death certificate, and left no issue of material fact precluding summary judgment against Wisconsin National on the charge that it had breached the policy contract and wrongfully paid Marvin Wyant the policy proceeds.
 
 
 11
 On appeal, Wisconsin National first contends that the provisions of the Michigan Death Act[2] defining brain death should not be used for determining the time of death for purposes of disbursing insurance policy proceeds. Specifically, defendant contends the legislature intended the Death Act be used only to protect transplant surgeons from liability in determining the death of a potential donor. We do not agree. The plain language of the statute requires that the method of determining death prescribed under the Act "... shall be used for all purposes in this state, including the trials of civil and criminal cases." Mich.Comp.Laws Ann. Sec. 333.1023 Sec. 3 (1980). The clarity of the statutory language precludes further judicial interpretation. People v. Hughes, 85 Mich.App. 674, 272 N.W.2d 567 (1978).
 
 
 12
 Defendant next contends that the time of death for purposes of identifying the beneficiary of life insurance is the time certified on the official death certificate. We agree that the certified time of death is presumptively correct. However, the death certificate provides only prima facie evidence of identity, occurrence, time and place of death. Greek v. Bassett, 112 Mich.App. 556, 561-62, 316 N.W.2d 489 (1982). Where, as here, evidence of death as defined under the Death Act contravenes the time of death stated in the death certificate, the presumptive correctness of the latter is rebutted. See, e.g., In re Kanera's Estate, 334 Mich. 461, 473, 54 N.W.2d 718 (1952). We find no error in the district court's conclusion that in cases involving life support systems the Death Act excludes reference to the death certificate and unambiguously designates the moment of death as the time when there is irreversible cessation of spontaneous brain functions.
 
 
 13
 Wisconsin National further contends that, assuming general applicability of the Death Act to this case, it was entitled to rely on the time of death stated on the death certificate because it was the only "announced opinion" of death and because the record fails to show Dr. Rawal "announced" his opinion of brain death within the meaning of the Act. Additionally, Wisconsin National argues it reasonably relied on the certified time of death because no other available information indicated Crobons was brain dead before the time of death noted on the certificate. The district court, however, concluded that Dr. Rawal's statement to Mrs. Crobons and his September 12th notation of brain death constituted "announced opinions" under the Death Act. The court further concluded that an announcement is not a necessary predicate to a determination of death under the Act. Moreover, the court determined that in any event Wisconsin National was not entitled to rely on the certificate because it had failed to heed sufficient warning of a potential dispute over Mr. Crobons' time of death.
 
 
 14
 We agree with the district court that the Michigan Death Act does not impose a prescribed or formal method of communicating an opinion of brain death. The statute provides that "a person will be considered dead if in the announced opinion of a physician, based on ordinary standards of medical practice in the community, there is irreversible cessation of spontaneous brain functions. Death will have occurred at the time when the relevant functions ceased." Mich.Comp.Laws Ann. Sec. 333.1021, sec. 1 (1980). Section 2 of the Death Act, however, requires that death be "pronounced" before life support systems are disconnected. In order to give the statute full effect, we must accord the terms "announcement" and "pronouncement" distinct meanings. Under ordinary definitions of these terms, we conclude that unlike a pronouncement, an announcement does not entail a formal, authoritative declaration of opinion and requires the doctor to communicate written or oral opinion of brain death such that a third person can determine when irreversible cessation of spontaneous brain functions occurred.
 
 
 15
 The district court's factual determination that Dr. Rawal announced his opinion of brain death to the family and in his progress notes between September 10th and 12th is not clearly erroneous. Time of death, therefore, occurred prior to the time noted on the death certificate and prior to execution of the change of beneficiary form. Nor can we find clear error in the court's finding that Wisconsin National had constructive notice Mr. Crobons may have suffered brain death prior to the time of death noted on the death certificate or at minimum that a potential conflict over the policy was brewing. Wisconsin National agent John Basinger testified he knew of Crobons' comatose state prior to September 13th and that the Wyants desired a quick change of beneficiary. The record also reveals that the hospital discharge summary, received by Wisconsin National, states that "[o]n 9/13/82 the EEG was performed which was consistent with electrocerebal silence" or brain death. This entry presented sufficient indication that brain death may have occurred prior to September 14th, 1982, the certified time of death. Moreover, the record shows Wisconsin National could have obtained access to Dr. Rawal's notes or at minimum a determination of when Mr. Crobons' brain functions irreversibly ceased, an inquiry required by the Death Act in cases involving artificial life support systems.
 
 
 16
 In our view, the district court correctly determined that the Michigan Death Act applies to this case. Further, the court did not err in determining that no dispute exists over the evidence that Dr. Rawal announced Mr. Crobons' brain death in his progress notes prior to the change in beneficiary. We do not see where in the record Wisconsin National proffered proof challenging the doctor's conclusion of irreversible brain death prior to September 13, 1982. As no material dispute on this key issue exists, we affirm the district court judgment on Count 1.
 
 
 17
 Plaintiff cross appeals contending the district court erred in refusing to order Wisconsin National to pay interest on the insurance policy proceeds from the date of death until the filing of the complaint. We affirm the district court judgment. Under Michigan law, absent policy provisions providing for interest payment from date of death, plaintiff is not entitled to interest prior to the filing of her complaint. Deneen v. New England Mutual Life Ins. Co., 615 F.2d 396, 398-99 (6th Cir.1980).
 
 
 18
 Accordingly, the judgment of the Honorable Charles W. Joiner is hereby affirmed.
 
 
 
 *
 Honorable G. Wix Unthank, U.S. District Court, Eastern District of Kentucky, sitting by designation
 
 
 [1]
 We note that plaintiff did not file a motion for summary judgment. However, in this Circuit it is permissible for a district court to enter summary judgment sua sponte as long as the party against whom judgment will be entered has sufficient opportunity to defend. Harrington v. Vandalia-Butler Board of Education, 649 F.2d 434, 436 (6th Cir.1981). Defendant does not raise any objection to the district court judgment on this ground
 
 
 [2]
 The Michigan Death Act, Mich.Comp.Laws Ann. Secs. 333.1021-1023 (1985), provides:
 
 
 [333]
 1021 Death; spontaneous respiratory and circulatory functions, cessation; artificial support, spontaneous brain functions, cessation; time
 Sec. 1. A person will be considered dead if in the announced opinion of a physician, based on ordinary standards of medical practice in the community, there is the irreversible cessation of spontaneous respiratory and circulatory functions. If artificial means of support preclude a determination that these functions have ceased, a person will be considered dead if in the announced opinion of a physician, based on ordinary standards of medical practice in the community, there is the irreversible cessation of spontaneous brain functions. Death will have occurred at the time when the relevant functions ceased.
 P.A.1979, No. 124, Sec. 1, Imd. Eff. Oct. 19.
 
 
 [333]
 1022 Pronouncement before artificial support terminated
 Sec. 2. Death is to be pronounced before artificial means of supporting respiratory and circulatory functions are terminated.
 P.A.1979, No. 124, Sec. 2, Imd. Eff. Oct. 19.
 
 
 [333]
 1023 Means of determining death, use
 Sec. 3. The means of determining death in section 1 shall be used for all purposes in this state, including the trials of civil and criminal cases.
 P.A.1979, No. 124, Sec. 3, Imd. Eff. Oct. 19.