Diane BOGER, Plaintiff–Appellant,

v.

WAYNE COUNTY; Vernice Davis–
Anthony, Defendants–
Appellees.

No. 91–1222.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 26, 1991.

Decided Dec. 2, 1991.

---

Barry S. Fagan (Argued & Briefed), Detroit, Mich., for plaintiff-appellant.

James W. Quigly, Lambro Niforos, Saul A. Green, Ellen E. Mason (Argued & Briefed), Department of Corp. Counsel, for the County of Wayne, Detroit, Mich., for defendants-appellees.

Before KENNEDY and NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

This is an appeal from summary judgment for the defendant-employer and a supervisor in an action by an employee who was involuntarily transferred. The plaintiff brought this action pursuant to 42 U.S.C. § 1983, claiming that the defendants violated her right to due process and equal protection, and infringed upon her First Amendment rights to freedom of speech and association. She also included in her complaint four claims under Michigan law. In its judgment the district court dismissed the pendent state claims without prejudice. We affirm in part, reverse in part, vacate

the judgment, and remand for further proceedings.

## I.

The plaintiff Diane Boger, a white female, worked in the Wayne County Medical Examiner's office, in various capacities from 1977 to 1986 before being appointed to the position of Department Supervisor I in 1987. She was appointed from the county civil service list and assumed most of the responsibilities that had been performed by her previous supervisor, who had held the position for approximately 30 years. The position required the plaintiff to perform a number of administrative duties, including handling personnel matters for the Medical Examiner's office, acting as media contact, preparing and reporting the departmental budget, and supervising, planning and reviewing the work of the office's clerical staff. The work was performed within policies formulated by the County Medical Examiner. At all times relevant to this case, Dr. Werner Spitz was the Medical Examiner. From 1984 to 1986 Ms. Boger had been administrative assistant and personal secretary to Dr. Spitz.

Late in 1987 an employee of the office complained that he was racially harassed by a male supervisor. There had been earlier complaints of racism against Dr. Spitz and other supervisors. An assistant county executive, the defendant Vernice Davis–Anthony, who was also the director of the Wayne County Department of Health and Community Services ordered an investigation by one of her subordinates, Lois Holmes. There is a dispute about how Ms. Holmes conducted the investigation, particularly about how she chose the persons she interviewed and whether these people represented all points of view of the staff. She did not interview Dr. Spitz, who was facing racism charges, or Ms. Boger, who was in charge of personnel records.

When contacted by a newspaper reporter about the allegation of racial harassment, Ms. Boger replied, according to the account published in *The Detroit News:* "It's a bunch of garbage.... We hire our people through civil service. That's how our promotions are made."

The record does not contain a report of the investigation. It appears, however, that Ms. Holmes found no evidence of racial discrimination in the Medical Examiner's office. Nevertheless, Ms. Davis–Anthony concluded that the office had management problems that stemmed from personality conflicts between Dr. Spitz and his staff. When the long-time supervisor had become ill in 1984, someone had recommended that she be replaced by another administrator rather than a Department Supervisor I. In order to hire Ms. Boger at this level rather than hiring an additional administrator, Dr. Spitz had agreed to assume some of the administrative duties that had been performed by Ms. Boger's predecessor. Ms. Davis–Anthony also concluded that Dr. Spitz was unable to perform administrative duties in addition to his responsibilities as Chief Medical Examiner.

Ms. Davis–Anthony recommended that the plaintiff be transferred to another position and that her position in the Medical Examiner's office be filled by an administrator chosen through the executive appointment process rather than by promotion of a civil service employee. After changing her mind several times, Ms. Davis–Anthony finally recommended that the plaintiff be transferred to a newly created position at the Wayne County Youth Home. The Youth Home had never requested a supervisor in writing; the director just responded affirmatively when asked if the home could use a person at the Department Supervisor I level. In addition, no request for the new position was submitted to the Wayne County freeze committee, the standard procedure for creating new positions. The plaintiff contends that neither the duties nor the opportunities for advancement at the Youth Home were comparable to those at her previous position. Ms. Boger took medical leave, and never reported to work at the Youth Home.

Next, a Department Executive I position was created at the Medical Examiner's of-

fice, with a salary approximately $12,000 more per year than the plaintiff had earned as a Department Supervisor I. Ms. Davis–Anthony refused to permit the plaintiff to compete for the new position, stating that she was underqualified because she did not have a college degree and because the duties were not the same as those Ms. Boger had performed. A black woman who had a college degree was appointed. The description of the position did not explicitly require a college degree. The plaintiff states that she was in her senior year of college at the time the new position was created and now has a degree in Business Administration. She also contends that the duties of the new position are virtually identical to those of the position she held. The defendants maintain that the duties were expanded under the new position.

## II.

### A.

The complaint charged that the plaintiff was removed from her position without due process of law. In dismissing this claim, the district court held that the plaintiff had no property interest in preventing her transfer or in competing for the newly-created position that entitled her to due process protection upon her transfer. The plaintiff has not appealed this ruling, and the due process claim is not before us.

The complaint also charged that the defendants Wayne County and Ms. Davis–Anthony discriminated against the plaintiff on the basis of her race and thus violated her right to equal protection of the law. The alleged discrimination consisted of Ms. Boger's removal from her position in the Medical Examiner's office and her replacement by a black woman.

The final claim of a federal cause of action in the complaint is based on the First Amendment. The complaint charged that the defendants removed Ms. Boger from her position in the Medical Examiner's office in retaliation for her and Dr. Spitz's exercising their right to freedom of speech. By an amendment, the plaintiff also alleged that she was transferred because of her "political alliance" with Dr. Spitz.

As to both the equal protection and First Amendment claims, the plaintiff alleged loss of professional esteem and extreme embarrassment, humiliation and mental anguish, in addition to loss of position and salary, pension benefits, seniority and promotion opportunities. The defendants asserted a number of affirmative defenses, including both absolute and qualified immunity.

### B.

At the first hearing on the defendants' motion for summary judgment the district judge felt that he required more information and delayed ruling on both the plaintiff's claims and the defendants' claims of immunity until the parties conducted discovery on the plaintiff's claims. He stated, however, that he did not see any loss of property interests and "I have grave trouble with the First Amendment claim." After about six months in which both parties took depositions and filed various documents, the court conducted a second hearing consisting of arguments by all counsel. At the conclusion of that hearing the court rendered an oral opinion from the bench.

The district court found that the investigation of problems in the Medical Examiner's office turned up no evidence of racism, but led to the conclusion that there was mismanagement. The court stated that there was a factual dispute concerning Ms. Boger's alleged statement to the press that the charge of racism was "garbage." The court found that, regardless of the reasons for the plaintiff's transfer, however, she was assigned to a position at the Youth Home "at the same grade and the same salary." Finding that the plaintiff had stated no constitutional violations, the court commented: "The basic problem with her claim is that she was transferred pursuant to the terms of the contract [a collective bargaining agreement] to a position of the same grade and same salary which she has never taken."

After holding that Ms. Boger had no property right in the newly created position

at the higher salary, the district court concluded that the transfer did not raise a due process claim. With respect to the equal protection claim, the court again noted that the plaintiff lost neither grade nor salary in the transfer. Granting summary judgment for the defendants on this claim, the court stated:

> And regardless of the fact that there are disputes regarding the circumstances and the motivation of the transfer, she has failed to provide proof of an essential element of the claim, namely, some damage. She can show no damages as a result of that.

The district judge applied the same reasoning in granting summary judgment on the First Amendment claim. He distinguished *Rutan v. Republican Party of Illinois*, — U.S. ——, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), on the ground that, unlike the *Rutan* plaintiffs, Ms. Boger could not show that the transfer deprived her of anything because she kept the same grade and salary. The court stated, that "[a]lthough there may be a question of fact on the First Amendment as to why she was transferred, the resolution of that is not material. She lost nothing in her transfer and her employer acted within the terms of the contract and she got the same pay and the same grade."

### C.

Following entry of judgment dismissing the section 1983 claims with prejudice and the pendent state claims without prejudice, the plaintiff filed a motion for reconsideration. She argued, inter alia, that the court had raised the issue of damages sua sponte without notice or an opportunity to defend, and that the court failed to recognize that a plaintiff may be awarded non-property damages in a section 1983 action for First Amendment and equal protection violations.

The court denied the motion without further hearing and this appeal followed.

### III.

#### A.

In her opening brief the plaintiff argued only one issue: that the district court committed reversible error in granting summary judgment for the defendants, sua sponte, on an issue not raised in the defendants' motion. She contended that the district court decided the case on the issue of damages without giving her the notice required by Fed.R.Civ.P. 56(c) and an opportunity to respond as required by decisions of this court. See *Crobons v. Wisconsin National Life Ins. Co.*, 790 F.2d 475, 478 n. 1 (6th Cir.1986) (a district court may enter summary judgment sua sponte so long as the party against whom judgment is entered is afforded a sufficient opportunity to defend).

We do not believe that the district court entered summary judgment sua sponte in this case. The defendants made a motion and the court held two hearings before granting summary judgment immediately following the second hearing. The plaintiff obviously had notice of the hearings; her counsel attended and participated. The district court did not violate Rule 56(c).

The plaintiff misconstrues the district court's ruling granting the defendants' motion. A careful reading of the opinion reveals that the district court used "damage" and "damages," not as a reference to an amount of pecuniary compensation for a loss or injury, but rather as a reference to loss or injury itself. Thus, the court was saying that because Ms. Boger was transferred to a different office within the department, as permitted by the collective bargaining agreement, while retaining the same grade and salary, she suffered no injury. This was the basis of the district court's finding that there was no liability, an issue that was fully addressed by both parties. Although the district court misstated what is required for an award of compensatory damages for a First Amendment or equal protection violation, it did not commit the procedural error asserted by the plaintiff.

#### B.

The defendants argued in their brief that the plaintiff had no property interest in the

newly created position and that her transfer was permitted under the collective bargaining agreement. This argument was in support of the district court's due process ruling, which the plaintiff has not questioned on appeal.

With respect to the equal protection claim, the defendants relied upon the fact that the plaintiff had failed to produce any evidence that she was victimized because of some suspect classification. They maintained that, at most, the pleadings and proof disclosed a "common tort," not a constitutional injury.

Turning to the First Amendment claim, the defendants contended that even if the plaintiff's transfer was in retaliation for her description of the charges of racism as "garbage," there was no First Amendment violation. They argued that public administrators have a right to reorganize their staffs without answering to the employees. The defendants also relied upon the district court's finding that the plaintiff suffered no financial deprivation from the transfer as support for the entry of summary judgment.

### C.

In her reply brief the plaintiff contended that the existence of a constitutionally protected property right is not required for consideration of claims based on the Equal Protection Clause and the First Amendment. She argued that summary judgment was improper because the district court found that questions of fact exist as to liability with respect to her equal protection and First Amendment claims.

At oral argument the plaintiff emphasized the district court's finding that questions of fact exist respecting these two federal claims. She also argued that she had pled and produced proof of emotional distress and humiliation resulting from her transfer. This is sufficient basis, she asserted, for permitting her to go forward with her equal protection and First Amendment claims.

### IV.

We review a district court's grant of summary judgment under a de novo standard of review. *E.E.O.C. v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990).

■ The district court erred in granting summary judgment on the equal protection and First Amendment claims on the basis of its finding that the plaintiff suffered no injury because she lost neither grade nor salary in the transfer. Plaintiff need not have suffered loss of salary, promotional opportunities, seniority or other monetary deprivations to have a cognizable interest protected by the First Amendment or the equal protection clause. In both counts, the plaintiff alleged injuries consisting of extreme embarrassment, humiliation, extreme mental anguish, and loss of professional esteem.

Quoting from earlier opinions, the Supreme Court reaffirmed in *Memphis Community School District v. Stachura*, 477 U.S. 299, 307, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986), that "mental and emotional distress constitute compensable injury in § 1983 cases" and that compensatory damages in such cases "may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation ... personal humiliation, and mental anguish and suffering.'" We recognized this element of section 1983 compensatory damages in *Ratliff v. Wellington Exempted Village Schools Bd. of Educ.*, 820 F.2d 792, 797 (6th Cir.1987).

■ Further, the district court erred insofar as it entered summary judgment on the First Amendment claim on the ground that the collective bargaining agreement gave management sole discretion to transfer employees, and thus that Ms. Boger had no property right to her position in the Medical Examiner's office. In *Rutan v. Republican Party of Illinois*, — U.S. —, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), the Court stated that it is not an essential element of an employee's First Amendment claim that the employee have an entitlement to a promotion or transfer. The Court stated that:

even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, *there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech.*

*Id.* 110 S.Ct. at 2736 (emphasis in text) (quoting *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972)). See also *Elrod v. Burns,* 427 U.S. 347, 359, 96 S.Ct. 2673, 2682, 49 L.Ed.2d 547 (1976) (same quotation).

This court held in *Newsom v. Norris,* 888 F.2d 371 (6th Cir.1989) that public employees who were unable to demonstrate a cognizable property interest in positions formerly held and to which they had not been reappointed, did nevertheless "have a liberty interest in remaining in their respective positions free from impermissible interference.... [I]t is constitutionally impermissible to terminate even a unilateral expectation of a property interest in a manner which violates rights of expression protected by the First Amendment." *Id.* at 375.

### V.

Although we have determined that the district court granted summary judgment for the wrong reason, we are required to affirm the district court if its judgment was correct for some other reason, even one not considered by the lower court. *Faughender v. City of North Olmsted, Ohio,* 927 F.2d 909, 913 (6th Cir.1991); *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.,* 772 F.2d 214 (6th Cir.1985). In determining whether summary judgment was properly granted, we examine the record to learn whether or not there is a genuine dispute as to a material fact, Fed.R.Civ.P. 56(c), drawing all justifiable inferences from the evidence in favor of the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### A.

In First Amendment cases, appellate courts must "make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." *Langford v. Lane,* 921 F.2d 677, 680 (6th Cir.1991) (quoting *Bose Corp. v. Consumers Union of the United States, Inc.,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984)). Our examination of the record convinces us that there are genuine issues of material fact that made summary judgment inappropriate with respect to the First Amendment claim.

Speech of a public employee is entitled to First Amendment protection if it relates to a matter of public concern. *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Given the fact that the Department of Health and Community Services was engaged in an investigation of charges of racial discrimination in the Medical Examiner's office, it is clear that the plaintiff's response to a newspaper reporter's inquiry about the charges addressed a matter of public concern.

There are other limitations on the right of a public employee to speak, even on issues of public concern. In order to prevail, such a plaintiff must also convince the trier of fact that her interest in making the statement outweighs her employer's interest in promoting efficiency in its operations, *Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987), and that the protected speech was a "substantial" or "motivating" factor in the decision to transfer or otherwise penalize the speaker. If the plaintiff satisfies these requirements, she has established a prima facie case and the burden shifts to the employer to show by a preponderance of the evidence that there were other reasons for its adverse action and that it would have taken the same action even if the employee had not spoken. *Mt. Healthy City School District Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Langford v. Lane,* supra, 921 F.2d at 680. These are issues of fact, however, and may not be decided on a motion for

summary judgment unless the evidence "is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir.1989). We do not have such a record in this case.

In an affidavit filed prior to the second hearing on the motion for summary judgment, the plaintiff stated that Wayne County Commissioner Bernard Kilpatrick and Ms. Davis–Anthony's assistant Suzanne Hall told Ms. Boger that her statement to the newspaper had angered Ms. Davis–Anthony and had led to the decision to replace the plaintiff. Commissioner Kilpatrick filed an affidavit in response denying that he had participated in such a conversation. Thus, there is a direct conflict in the evidence as to whether Ms. Boger's transfer resulted from her statement to the press. This is a genuine issue of material fact that must be resolved by a trier of fact. The record presents similar conflicts in the evidence respecting the other elements of the First Amendment claim as outlined above. Further proceedings are required.

### B.

■ Relying on cases that protect public employees from adverse employer actions because of the employee's political beliefs and associations, e.g., *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), Ms. Boger also argued that her transfer was unlawful because it was based in part on her association with Dr. Spitz. At the time of the events at issue, Dr. Spitz was engaged in extensive controversies with other Wayne County administrators and eventually resigned amidst various charges and recriminations. The plaintiff allied herself with Dr. Spitz and appears to argue that this "affiliation" was at least a partial cause of her involuntary transfer to the Youth Home.

This court has held that the political beliefs and associations which are protected under *Elrod v. Burns, Branti v. Finkel* and *Rutan v. Republican Party of Illinois* are not confined to partisan beliefs and associations. "Political affiliation" has been held to "apply to political differences of any kind, not merely differences in party membership." *Williams v. City of River Rouge,* 909 F.2d 151, 153 n. 4 (6th Cir. 1990); *Faughender v. City of North Olmsted,* supra, 927 F.2d at 914 n. 2 (6th Cir. 1991). We have also held that "no logical reason exists for distinguishing between speech and association in applying *Connick [v. Myers]* to first amendment claims." *Monks v. Marlinga,* 923 F.2d 423, 425 (6th Cir.1991).

Thus, the plaintiff may have raised an additional First Amendment claim by seeking to connect the transfer to her affiliation with Dr. Spitz. Nevertheless, summary judgment is proper with respect to this First Amendment claim because the plaintiff failed to satisfy either prong of such a claim. Nothing in the record before us implicates a "political affiliation" as addressed in these cases. Ms. Boger's "affiliation" with Dr. Spitz, as alleged, does not involve her belief on matters of public concern or an affiliation with Dr. Spitz to advance those beliefs, *Elrod v. Burns,* 427 U.S. 347, 355–60, 96 S.Ct. 2673, 2680–83, 49 L.Ed.2d 547 (1976), but rather simply a personal alliance with respect to personality conflicts and social friction. The plaintiff also failed to produce any probative evidence that her alliance with Dr. Spitz was a motivation for the transfer. Summary judgment should be entered against a party who, after adequate time for discovery, "fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To this limited extent we affirm dismissal of the claim contained in Count IV of the complaint.

### VI.

The plaintiff's equal protection claim, as set out in Count III of the complaint, charges that the defendants discriminated against her in her employment on the basis of race. More specifically, the complaint states that the discrimination consisted of removing the plaintiff from her position

"and replacing her with a black female, who was not nearly as qualified as Plaintiff," and "threatening Plaintiff that she would be transferred to a new position with the Wayne County Youth Home, based upon Plaintiff's race...."

The complaint does not allege that the plaintiff was deprived of equal protection by the refusal to consider her for the newly created position of Department Executive I. General allegations of discrimination appear in Count I, which specifically related to a claim under the Michigan Elliott–Larsen Civil Rights Act. Count I of the complaint states that when the new position was created at a higher salary than Ms. Boger was receiving, she "was overlooked for the position and instead, the position was given to Joan Price, a black female, who was less qualified than Plaintiff to perform the duties of the position." Count I also contains a charge that the defendants removed Ms. Boger from her position "due to unfounded allegations of racial discrimination against Plaintiff." Neither of these charges was repeated in Count III, and so far as the complaint shows, they apply only to the state law claim in Count I.

Despite these deficiencies in the pleadings, the parties appear to have treated the equal protection claim as involving both the involuntary transfer and the failure to consider Ms. Boger for appointment to the Department Executive I position. The district court's reference to the Executive I position in its oral opinion does not appear to treat failure to consider Ms. Boger for that position as a separate claim. Rather, the opinion treats it more as a failure to promote the plaintiff, which along with the involuntary transfer, comprised one claim of an equal protection violation. The district court did not refer to the claim that the plaintiff was removed on the basis of allegations that she had engaged in racial discrimination.

## A.

■ We believe the district court's treatment of the equal protection claim as a single claim containing two components[1] was correct. The plaintiff failed to produce any proof that she was entitled to be considered for the new position. The expired collective bargaining agreement provided that executive positions would be filled by open competitive examination and that current members of the union could not be denied an opportunity to compete except for bona fide stated reasons. There was no collective bargaining agreement between Ms. Boger's union and Wayne County for 14 months from November 30, 1986, to February 1, 1988. It was during this period that the plaintiff was transferred and her position was filled at a higher salary. There was no proof that the provisions of the expired agreement controlled appointment to executive positions during the hiatus. The collective bargaining agreement effective February 1, 1988, changed the appointment process for executive positions to provide that such positions "shall be filled by appointment at the sole discretion of the County Executive."

## B.

■ Treating the equal protection claim as based upon an involuntary transfer and a failure to promote, we have examined the record to determine if the plaintiff's responses to the motion for summary judgment raised genuine issues of material fact. We note, first, that both the expired union contract and the new one gave the County complete discretion to transfer an employee from one position to another position within the same class. Nevertheless, an employer possessing such authority may not transfer an employee for reasons that infringe upon rights guaranteed by the United States Constitution.

In order to establish an equal protection violation against a public employer in a section 1983 action, a plaintiff must show

---

**1.** Like the district court, we found no basis for considering the "allegations" charge as part of the plaintiff's equal protection claim. In the same way, we find a vague allegation that Ms. Davis–Anthony vacillated while considering where to assign the plaintiff (supposedly to put pressure on Ms. Boger to resign) irrelevant to the equal protection claim.

that the employer made an adverse employment decision "with a discriminatory intent and purpose." *Charles v. Baesler,* 910 F.2d 1349, 1356–57 (6th Cir.1990). See also *Gutzwiller v. Fenik,* 860 F.2d 1317, 1325 (6th Cir.1988) (the plaintiff must prove by a preponderance of the evidence that she was the victim of "intentional and purposeful discrimination"). When the claim is one of "reverse discrimination," that is a claim by a white person that the employer discriminated in favor of a member of a racial minority, "the presumption that the circumstances which normally make out a prima facie case are indicative of discrimination is not available, absent a showing that 'background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Jasany v. United States Postal Service,* 755 F.2d 1244, 1252 (6th Cir. 1985) (quoting *Parker v. Baltimore & Ohio R.R. Co.,* 652 F.2d 1012, 1017 (D.C.Cir.1981)); *Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63, 67 (6th Cir.1985).

One "background circumstance[ ]" revealed by this record was the existence of an intense power struggle within county government that appears to have centered on Dr. Spitz's relations both with his superiors and with the union. Charges of racial discrimination were made against Dr. Spitz and at least one other supervisor in the Medical Examiner's office. Although no such charges were made against Ms. Boger in connection with the investigation of the Medical Examiner's office, she was identified with her "boss," Dr. Spitz, in these intramural disputes. She was likely a victim of office politics, but as we pointed out in Part V. B., her proof failed to demonstrate the existence of a genuine issue of material fact to support her claim that she was transferred as punishment for her association with Dr. Spitz in violation of her First Amendment rights.

We believe the proof is equally lacking with respect to the plaintiff's equal protection claim. We have held that a plaintiff in a section 1983 equal protection case must do more than just introduce evidence of discriminatory intent and suggest that

"such intent could have played a role in an adverse employment decision. Rather, a plaintiff is required to demonstrate that the adverse employment decision would not have been made 'but for' her [race]." *Gutzwiller,* supra, 860 F.2d at 1325.

The evidence that Ms. Boger offered in response to the motion for summary judgment consisted of (1) her affidavit and that of Dr. Spitz stating that Ms. Davis–Anthony knew that the plaintiff and three white male civil servant employees wished to apply for the Department Executive I position, but that Ms. Davis–Anthony directed that Dr. Spitz interview none of them and that Ms. Davis–Anthony did not consider anyone but Ms. Price for the position; (2) Ms. Boger's affidavit that a county commissioner and an assistant to Ms. Davis–Anthony told them that the "garbage" statement to the newspaper reporter angered Ms. Davis–Anthony and she decided to replace Ms. Boger with a black employee; and (3) undefined and unidentified statistical evidence to show that "for a significant period of time prior to and subsequent to the Plaintiff's removal from her position in the MEO, the defendants engaged in a discriminatory practice of replacing white employees with black employees."

We conclude that none of the proffered evidence demonstrated that the plaintiff could establish the existence of the crucial element of her equal protection case—that the defendants intentionally and purposefully discriminated against her on the basis of her race in transferring her to the Youth Home and replacing her with a black woman at a higher salary and classification and that "but for" her race, this employment action would not have taken place.

Evidence that Ms. Davis–Anthony retaliated against the plaintiff for her statement to the reporter may be probative of her First Amendment claim, but it fails to establish the required element of the equal protection claim. The evidence concerning Ms. Davis–Anthony's directions to Dr. Spitz not to interview candidates, and her recommendation to the county executive of her choice for the new position only emphasizes the tensions between the two and Ms.

Davis–Anthony's determination to keep the upper hand. There was no showing at all that these aspirants for the position were disqualified by reason of race. Finally, the general claim of discrimination based on unidentified statistical evidence is not sufficient to show the existence of the essential element of intentional and purposeful reverse discrimination.

## CONCLUSION

The plaintiff presented her due process and equal protection claims in practically identical language in the complaint. She sought to establish the viability of both claims in the face of the defendants' motion for summary judgment by relying on the same body of evidence. She now concedes that summary judgment was properly granted on her due process claim, but fails to identify factual support sufficient "to establish the existence of an element essential" to her equal protection claim. *Celotex*, supra, 477 U.S. at 322, 106 S.Ct. at 2552. The essential element about which a trier of fact would be required to speculate is the alleged intentional and purposeful discrimination against Ms. Boger in the decision to transfer her to the Youth Home, while replacing her with Ms. Price, based upon her race.

Except for the possible First Amendment violation, the decision to transfer Ms. Boger and to replace her with a person holding a different classification could not be found on this record to implicate rights guaranteed her by the United States Constitution.

The district court did not consider her state law claims, but dismissed them without prejudice. We make no judgment with respect to those claims.

The judgment of the district court is affirmed insofar as it dismissed the equal protection claim and the claim of deprivation of the right of political association under the First Amendment. The judgment is reversed insofar as it dismissed the claim of violation of freedom of speech under the First Amendment, and the case is remanded for further proceedings including consideration of the defendants' immu-nity claims. The district court will reconsider dismissal of the pendent state law claims in light of its ultimate disposition of the remanded First Amendment and immunity issues.

The parties will bear their own costs of this appeal.