101 F.3d 702
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Glenn J. BOGGS, Plaintiff-Appellant,
v.
COMMONWEALTH OF KENTUCKY; Kentucky State University; Louis
B. Nunn, Edward T. Breathitt, Allen Lansing, James Luckett,
Barbara Curry, John Johnson, William Moore, and Edythe Hayes
as members of the Kentucky State University Board of Regents
and in their individual capacities; their successors in
their official capacities; Dr. John T. Wolfe, Leroy
Summers, Lawrence Fortson, and John W. Mason in their
official capacities and individually; and their successors
in office in their official capacities, Defendants-Appellees.
 No. 95-6452.
 United States Court of Appeals, Sixth Circuit.
 Nov. 20, 1996.
 
 Before: NELSON and NORRIS, Circuit Judges, and HIGGINS, District Judge.*
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 This is a reverse race discrimination case, filed by appellant Glenn J. Boggs in the United States District Court for the Eastern District of Kentucky. Mr. Boggs claimed that his employer, Kentucky State University, violated federal and state anti-discrimination laws by failing to promote him to a police lieutenant's position. Mr. Boggs also claimed that he was the victim of a constructive discharge.
 
 
 2
 After dismissing various defendants and counts on Eleventh Amendment and other grounds, the district court entered summary judgment for all remaining defendants on all remaining counts. Agreeing with the district court that there were no genuine issues of material fact and that the defendants were entitled to prevail as a matter of law, we shall affirm the judgment.
 
 
 3
 * In December of 1989 Mr. Boggs, who is white, went to work as a police officer at KSU, a traditionally black institution. He was suspended from the force with pay for a three-month period early in 1991, owing to his violation of a rule against having a relationship with a KSU student. Upon completing this suspension Mr. Boggs returned to work under disciplinary probation. His probation ended in late June of 1991.
 
 
 4
 In July of 1991 KSU solicited applications for the job of police lieutenant. Mr. Boggs was one of several applicants. The position was offered first to Timothy W. Hurt, a white male who was not on the KSU force and who may not have applied for the job. Mr. Hurt turned the offer down. The next offer went to Officer Donald K. Turner, a black male, who accepted the job.
 
 
 5
 Mr. Turner, like Mr. Boggs, had been disciplined by the KSU force. Turner had broken a firearms rule while attending a police academy, and was consequently demoted to patrolman in April of 1991. Mr. Turner first joined the KSU force in 1986--more than three years before Mr. Boggs--and he had served as a lieutenant from July of 1990 until his demotion.
 
 
 6
 On December 20, 1991, Mr. Boggs filed an Equal Employment Opportunity Commission charge alleging that his suspension and probation were the products of racial discrimination. The EEOC issued a right-to-sue notice, and Mr. Boggs filed a federal lawsuit (Case No. 92-34) that was later dismissed on the merits.
 
 
 7
 On three occasions in the spring of 1992 Mr. Boggs was reprimanded by his superior officers, Chief of Police John W. Mason and Lieutenant James Burbridge. The reprimands were in response to the following alleged misdeeds: (1) failing to report to work on a scheduled work day; (2) mishandling evidence; and (3) bringing a tape recorder to a staff meeting when ordered not to do so. On June 17, 1992, Mr. Boggs resigned from the KSU force.
 
 
 8
 Mr. Boggs filed a second claim with the EEOC on April 5, 1993--292 days after his resignation. One week after the filing of the EEOC claim he filed the instant lawsuit. His complaint contained four counts: (1) failure to promote in violation of Title VII of the Civil Rights Act of 1964; (2) constructive discharge in violation of Title VII and 42 U.S.C. § 1983; (3) intentional infliction of emotional distress (the dismissal of this claim has not been appealed); and (4) failure to promote and constructive discharge in violation of the Kentucky Civil Rights Act, Ky.Rev.Stat. §§ 344.010 et seq. (This statute is Kentucky's version of Title VII.) The district court dismissed some claims on Eleventh Amendment and other grounds, as we have said, and granted summary judgment on the rest of Mr. Boggs' claims. This timely appeal followed.
 
 II
 
 9
 Mr. Boggs' Title VII claims must be tested against the applicable statute of limitations, which provides as follows:
 
 
 10
 "A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ... except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto ... such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred...." 42 U.S.C. § 2000e-5(e)(1) (emphasis added).
 
 
 11
 The last event in this case that could have been an unlawful employment practice was the alleged constructive discharge, which occurred when Mr. Boggs resigned on June 17, 1992. Mr. Boggs did not file a charge with the EEOC until April 5, 1993, well beyond the 180 days prescribed by the foregoing provision. He cannot claim the benefit of the 300-day limitation period because, although Kentucky has a state agency of the type described in § 2000e-5(e)(1), Mr. Boggs did not "initially institute[ ] proceedings" with that agency. See Maurya v. Peabody Coal Co., 823 F.2d 933, 934 (6th Cir.1987) ("In deferral states a claimant who files a claim with the state agency is given 300 days to file his claim with the EEOC") (emphasis added), cert. denied, 484 U.S. 1067 (1988). Mr. Boggs has not contended that the period should be tolled due to waiver, estoppel, or other equitable considerations.
 
 
 12
 The purpose of the extended 300-day limitation period is to give state agencies a chance to remedy alleged discrimination. Mr. Boggs cannot invoke the 300-day period when he did not give the Kentucky agency this chance. We decline to ignore--as Mr. Boggs implicitly asks us to do--the pellucid language of § 2000e-5(e)(1). The Title VII claims are barred in their entirety.
 
 III
 
 13
 The district court correctly dismissed the following individual defendants: Louie B. Nunn, Edward Breathitt, Allen Lansing, James Luckett, Barbara Curry, John Johnson, William Moore, Edythe Hayes, Dr. John Wolfe, LeRoy Summers, and Lawrence Fortson. Mr. Boggs did not produce a scintilla of evidence linking any of these defendants to intentional or purposeful discrimination. This leaves us with the § 1983 constructive discharge claim against Chief Mason, and we turn to that claim next.
 
 IV
 
 14
 Section 1983 claims arising out of events in Kentucky are subject to a one-year statute of limitations. Collard v. Kentucky Bd. of Nursing, 896 F.2d 179 (6th Cir.1990). Mr. Boggs filed this action on April 12, 1993. The district court held that he could not prove his claim of constructive discharge with evidence of events occurring prior to April 12, 1992. This was error. Statutes of limitations apply to claims, not the evidence supporting the claims. Black Law Enforcement Officers Ass'n v. City of Akron, 824 F.2d 475, 482-83 (6th Cir.1987).
 
 
 15
 The district court also held that the doctrines of res judicata and collateral estoppel precluded Mr. Boggs from relying on evidence of events prior to March 23, 1992, when Civil Action No. 92-34 was filed. In that action Mr. Boggs challenged his suspension and disciplinary probation. Because the suit was dismissed on the merits, Mr. Boggs cannot rely on the same events to prove discrimination here. He is not necessarily precluded from relying on events that were not the subject of the first federal action, however.
 
 
 16
 Mr. Boggs' § 1983 reverse discrimination claim requires proof of purposeful, intentional discrimination by Chief Mason and proof that adverse employment decisions would not have been made but for Mr. Boggs' race. Boger v. Wayne County, 950 F.2d 316, 324-25 (6th Cir.1991); Gutzwiller v. Fenik, 860 F.2d 1317, 1325 (6th Cir.1988). In cases such as this our circuit imposes a higher threshold of proof on a white plaintiff than on a plaintiff who belongs to a racial minority. The plaintiff in a reverse discrimination case must show that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." Boger, 950 F.2d at 325 (quoting Jasany v. United States Postal Serv., 755 F.2d 1244, 1252 (6th Cir.1985)); Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 67 (6th Cir.1985). The reverse discrimination plaintiff must also demonstrate that he was treated differently from a similarly-situated member of a racial minority. Id. at 67.
 
 
 17
 Mr. Boggs points to the following circumstances as indicating that Chief Mason is the unusual employer who discriminates against whites:
 
 
 18
 (1) Mr. Boggs points out that most of his superiors were black, as were most of the administrators at KSU. The intended inference is as unacceptable as it is unpalatable, and it has little relevance to the claim against Chief Mason.
 
 
 19
 (2) Mr. Boggs says that Chief Mason told him that Mr. Turner was promoted to "maintain tranquility within the police department."
 
 
 20
 (3) Mr. Boggs claims to have been told by Chief Mason that "they won't let me promote you."
 
 
 21
 (4) Mr. Boggs was required to work university dances unarmed and in civilian clothes while black officers wore uniforms and were armed. This incident occurred before Mr. Mason became chief of police at KSU.
 
 
 22
 (5) Mr. Boggs and another white officer were once forced to work in the rain while black officers were allowed to work in covered conditions. This incident also occurred before Mr. Mason became chief of police.
 
 
 23
 (6) Mr. Boggs was suspended and placed on disciplinary probation for dating a KSU student, while a black officer who dated a KSU student was not disciplined. This evidence is barred by the doctrine of collateral estoppel, for it was the subject of Mr. Boggs' previous federal suit. In any event, the incident occurred before Mr. Mason became chief of police.
 
 
 24
 (7) Mr. Boggs was reprimanded for questioning Mr. Turner's first promotion to lieutenant in July of 1990. This incident also occurred before Mr. Mason became chief of police.
 
 
 25
 (8) Mr. Boggs claims that Lieutenant Burbridge, who is black, flaunted a "100% Black" medallion in Mr. Boggs' face. However odious, Lt. Burbridge's behavior has no probative value for a claim against Chief Mason.
 
 
 26
 The only evidence that Mr. Boggs can muster against Chief Mason himself are the alleged statements relating to the promotion of Mr. Turner. This evidence is suspect, as we shall see presently--but even if it were not, we do not believe that the evidence is sufficient to create an inference that Chief Mason discriminates against whites.
 
 
 27
 In the EEOC charge he filed on December 20, 1991, Mr. Boggs stated that "Chief Mason told me that I was not selected for the above position because I had been on a disciplinary probation." If Chief Mason had really told Boggs that Turner was promoted to maintain tranquility in the department, it strikes us as passing strange that Mr. Boggs would not have mentioned this fact in complaining to the agency responsible for investigating racial discrimination.
 
 
 28
 Mr. Boggs offers a blanket reference to his entire deposition for evidence of other "background circumstances." This argument by incorporation is less than satisfactory, but we have nonetheless considered the deposition in its entirety. It changes nothing, in our view.
 
 
 29
 Mr. Boggs complained that his three reprimands in the spring of 1991 were "false and frivolous." Yet he admits the underlying factual bases for all three reprimands. Mr. Boggs also alleged that Chief Mason gave a so-called "Chitlin Test"--a 25-question multiple choice quiz purportedly testing knowledge of African-American slang and idioms--to white officers, but not to black ones. No one was required to take the test, however, and it is not clear that anyone did. Mr. Boggs admits that he did not take the test and suffered no adverse consequences as a result. The test may have been a spoof, or it may simply have been ill-advised, but we do not believe it supports an inference of racial animus.
 
 
 30
 Mr. Boggs also complains that he was asked to drop a pending EEOC charge in exchange for a promotion to sergeant. Chief Mason did not do the asking, however, and Mr. Boggs neither dropped the charge nor gave up his sergeant's position. Several other instances of alleged discrimination are cited, but they either occurred prior to Mason's appointment as Chief or have no conceivable connection to him.
 
 
 31
 Other evidence confirms the implausibility of an inference of discrimination. It was Chief Mason who promoted Mr. Boggs to sergeant--a position Boggs retained until his resignation. Chief Mason permitted Mr. Boggs to be an "investigator" with special privileges until early 1991; no other patrol officer received such permission. And Chief Mason, it will be recalled, first offered the job of lieutenant to a white man.
 
 
 32
 Moreover, Mr. Boggs has made no showing that he was treated differently from any similarly-situated black officer. To create an inference of disparate treatment, a plaintiff
 
 
 33
 "must prove that all of the relevant aspects of his employment situation are 'nearly identical' to those of the [black] employees who he alleges were treated more favorably. The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances." Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir.1994) (quoting Ruth v. Children's Medical Center, 1991 WL 151158, at * 6 (6th Cir. Aug. 8, 1991)).
 
 
 34
 Mr. Boggs' claim suffers from a complete failure of proof on this point. He has not carried the burden of making out a prima facie case of reverse discrimination.
 
 V
 
 35
 When construing the Kentucky Civil Rights Act, Ky.Rev.Stat. §§ 344.010 et seq., Kentucky courts look for guidance to the Civil Rights Act of 1964 and the federal decisions thereunder. McNeal v. Armour & Co., 660 S.W.2d 957, 959 (Ky.Ct.App.1983). The district court dismissed Mr. Boggs' Kentucky civil rights claims because it had dismissed his Title VII claims. But the dismissal of the Title VII claims was premised, at least in part, on the limitations period in 42 U.S.C. § 2000e-5(e)(1). Kentucky's civil rights law has an independent five-year statute of limitations. Leonard v. Corrections Cabinet, 828 S.W.2d 668, 670 (Ky.Ct.App.1992). All of the allegedly discriminatory events about which Mr. Boggs complains--except those barred by res judicata or collateral estoppel--must therefore be considered under the Kentucky act.
 
 
 36
 Upon consideration, it seems clear to us that the state law claim fails for the same reasons the § 1983 claim against Chief Mason fails. Mr. Boggs has made no showing that Chief Mason is the unusual employer who discriminates against whites. Mr. Boggs has not shown that he was treated differently from any similarly-situated black officer. Indeed, Mr. Turner was objectively more qualified for the promotion than Mr. Boggs: Mr. Turner had a longer tenure on the KSU force and had previously served as a lieutenant. The intentional or purposeful discrimination that is a necessary component of Mr. Boggs' claim has not been demonstrated.
 
 
 37
 The judgment of the district court is AFFIRMED.
 
 
 38
 HIGGINS, District Judge, dissenting.
 
 
 39
 I respectfully dissent from the Court's opinion affirming the dismissal of Mr. Boggs' equal protection claim under Section 1983.
 
 
 40
 Mr. Boggs was a white officer employed by the campus police department at Kentucky State University, a historically black institution. All of the officers in Boggs' chain of command were black. The chief of the campus police, Mr. Mason, and his three lieutenants were all black. These are facts, whether characterized as acceptable or unacceptable, palatable or unpalatable.
 
 
 41
 There is likewise evidence in the record that Lieutenant Burbridge, who is black, flaunted a "100% Black" medallion in Mr. Boggs' face. The majority asserts that, however odious the behavior of this superior officer, it has no probative value for a claim against Chief Mason as the decision-maker. I disagree. Suppose the situation was reversed and a white superior officer had flaunted a 100% White or Aryan Race medallion in the face of a black subordinate. It is unlikely that such conduct would occur in a small department by a superior officer without the chief's knowledge. I suggest that this is an evidentiary showing, along with the inference that may be drawn from it, (for whatever value the trier of fact may give to it) of a background circumstance supporting the suspicion that the defendant was that unusual employer who discriminates against the majority. Boger v. Wayne County, 950 F.2d 316, 324-25 (6th Cir.1991).
 
 
 42
 I find nothing suspect about Mr. Boggs' assertion that Chief Mason told him that "they won't let me promote you." It seems to me that this is evidence for the trier of fact to consider as a part of the mix. In like fashion, it is not passing strange to me that Mr. Boggs asserted that Chief Mason told him that he was not selected for the promotion because of the need to maintain tranquility in the department. This is merely an evidentiary fact. Indeed, it would be strange if every evidentiary fact was set forth in a charge lodged with an administrative agency. It is also interesting to note that Chief Mason testified that he was experiencing turmoil in the department and "needed tranquility more than anything else." Joint Appendix at 170.
 
 
 43
 Finally, there is the "Chitlin Test." The majority dismisses this evidence as if with a wave of the hand.
 
 Mr. Boggs testified as follows:
 
 44
 In the summer of 1991 after Chief Mason's appointment, he circulated this test called the Chitlin Test to--I never knew a black officer getting a test. But I seen all of the white officers there have a test in their box. See we had activity boxes.
 
 
 45
 And there was a note on it, please take this test and return.
 
 
 46
 I never would take the test. And I will tell you why I didn't take the test. I believe the test was a form of racial harassment in that he was insinuating that I didn't know enough about the African/American culture maybe in order to work there, and I refused to take the test.
 
 
 47
 Joint Appendix at 275.
 
 
 48
 If Mr. Boggs was not required to take the test and would suffer no adverse consequences as a result, why did Chief Mason circulate it in the first place? To suggest that it may have been a spoof or may simply have been ill-advised, but of no probative value to support an inference of racial animus is to take a very limited view of the real world. Again, I suggest if the positions were reversed and a white chief had circulated a "Bubba" or "Good Ole Country Boy Red Neck" test to black officers, a hullabaloo would have been raised in this Court.
 
 
 49
 I conclude from a reading of the record that there is material evidence from which an inference of discrimination and disparate treatment could be drawn, even considering this circuit's imposition of a heightened standard of proof in a reverse discrimination case. Hence, in my judgment, the district court erred in dismissing the Section 1983 claim rather than submitting the issue to a jury.
 
 
 
 *
 The Honorable Thomas A. Higgins, United States District Judge for the Middle District of Tennessee