**Florence A. WARREN, Plaintiff–Appellant,**

v.

**OHIO DEPARTMENT OF PUBLIC SAFETY, William L. Vasil, Defendants–Appellees.**

**No. 00–3560.**

United States Court of Appeals, Sixth Circuit.

Oct. 3, 2001.

Before GUY and MOORE, Circuit Judges; and HULL, District Judge.*

RALPH B. GUY, JR., Circuit Judge.

Plaintiff, Florence A. Warren, appeals from the order granting summary judgment in favor of defendants, Ohio Department of Public Safety (ODPS) and William L. Vasil. Plaintiff argues that the district court erred in finding (1) that she did not participate in protected activity under the retaliation provisions of Title VII, (2) that there was no causal connection between protected activity and her termination, and (3) that plaintiff's speech did not address a matter of public concern under the First Amendment.[1] For reasons different than those given by the district court, we affirm the grant of summary judgment.

## I.

Plaintiff was the senior EEO compliance officer and Chief of Human Resources at ODPS. At the relevant times in this case, plaintiff reported to defendant Vasil, the Assistant Director of ODPS.

Plaintiff's duties included supervising personnel matters; providing advice to the Director and the Assistant Director regarding personnel matters; drafting pamphlets and handbooks concerning work rules, disciplinary procedures, and other matters related to EEO compliance. Plaintiff also investigated or supervised the investigation of sexual discrimination

---

* The Honorable Thomas G. Hull, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1. Plaintiff does not pursue and, therefore, has abandoned on appeal the dismissal of her other 42 U.S.C. § 1983 and state law claims.

and harassment complaints by ODPS employees.

There were a large number of sexual discrimination and harassment complaints within ODPS during plaintiff's tenure. Three specific internal investigations were the focus of plaintiff's Title VII claim. The first involved Bessie Smith, a Human Resources employee, who was disciplined in May 1995 for neglect of duty and malfeasance. As a result of Bessie Smith's mishandling of the termination of another employee, the terminated employee was awarded back pay. There were no allegations of discrimination under Title VII in that internal investigation. In the second, Rebecca Gustamente complained of sexual harassment by her supervisor. In November 1994, the supervisor was reassigned within ODPS. Gustamente testified that she was not subjected to further harassment thereafter. Warren testified that her last involvement with the Gustamente complaint was in mid to late 1994 and no later than February 1995. Julie Smith was the subject of the third investigation. Julie Smith was disciplined in August 1995, after she was charged with sexual harassment by another female employee.

Plaintiff subsequently heard that the union was considering filing an unfair labor practices complaint or class action litigation with respect to discrimination complaints. She then arranged to meet with Maria J. Armstrong, the Deputy Chief Legal Counsel for the Governor of Ohio, on the morning of November 9, 1995. Plaintiff states that she informed Armstrong of the threatened union action and discussed plaintiff's concerns that Vasil acted illegally in his direct handling of several discrimination issues, including the Julie Smith matter. In the afternoon of that same day, Vasil gave plaintiff notice of termination of her employment with ODPS. While he did not have prior knowledge, Vasil learned of the morning meeting between plaintiff and Armstrong in the afternoon of the day that plaintiff's employment was terminated.

Vasil stated that he terminated plaintiff's employment because of complaints about the ineffectiveness of the Human Resources division and lack of confidence in her judgment and reliability. Defendants offered evidence that Vasil decided to discharge plaintiff and took steps to initiate the discharge before plaintiff's meeting with Armstrong. In anticipation of discharging plaintiff, Vasil discussed transferring plaintiff's duties to another employee. Vasil talked to Warren Davies about having John Demaree assume responsibility for all human resource matters for ODPS. Davies stated in his affidavit that this discussion occurred approximately two weeks before November 9. While they did not specifically discuss plaintiff's termination, Davies understood that Vasil was going to transfer all of plaintiff's responsibilities to Demaree. The transfer of those responsibilities became effective on November 9.

Vasil did specifically discuss plaintiff's termination with Armstrong. Armstrong testified in her affidavit and during her deposition that Vasil told her several weeks before the November 9 meeting that Vasil intended to discharge plaintiff and restructure the Human Resources functions within ODPS. Finally, Demaree testified that several days before November 9, 1995, Vasil asked him to prepare the paperwork for terminating plaintiff's employment.

The district court granted summary judgment in favor of defendants. Plaintiff appealed.

## II.

We review *de novo* the district court's grant of summary judgment. *See, e.g.,*

*Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir.1997). We may affirm the grant of summary judgment on other grounds, even one not considered by the district court. *Boger v. Wayne County*, 950 F.2d 316, 322 (6th Cir.1991). Summary judgment is appropriate when there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## A. Title VII Retaliation

Title VII prohibits an employer from retaliating against an employee who has "opposed" any practice by an employer made unlawful under Title VII. It also prohibits retaliation against an employee who has "participated" in any manner in an investigation under Title VII. 42 U.S.C. § 2000e–3(a). These two provisions are known as the opposition clause and the participation clause. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir.), *cert. denied*, 531 U.S. 1052, 121 S.Ct. 657, 148 L.Ed.2d 560 (2000).

 To establish a claim under either the opposition or the participation clause, plaintiff must show that (1) she engaged in activity protected by Title VII, (2) this exercise of protected activity was known to defendants, (3) defendants took an adverse employment action, and (4) there was a causal connection between the protected activity and the adverse employment action. If plaintiff establishes this *prima facie* case, the burden shifts to defendants to articulate legitimate, nondiscriminatory reasons for plaintiff's discharge. Plaintiff must then demonstrate that the proffered reasons were a mere pretext for discrimination. *Id.* The plaintiff bears the burden of persuasion throughout the entire process. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir.2000).

Plaintiff argues that she was retaliated against in violation of both the participation and the opposition clauses because she complained about Vasil to Armstrong at the November 9 meeting. The district court in this case found that plaintiff did not engage in protected activity under the participation clause and that she failed to show a causal connection between her alleged opposition activities and her termination. We find that summary judgment was appropriate on both plaintiff's opposition and participation claims because she failed to show a causal connection between the alleged protected activity and her termination.

### 1. Participation Claim

 The district court concluded that plaintiff failed to establish a claim of retaliation with respect to the Bessie Smith internal investigation because there were no allegations of violation of Title VII rights. We agree. Section 2000e–3(a) requires participation in proceedings under Title VII or opposition to unlawful employment practices under Title VII. *Holden v. Owens–Illinois, Inc.*, 793 F.2d 745, 748 (6th Cir.1986). There were no Title VII allegations involved in the Bessie Smith matter, and it cannot form the basis of a retaliation claim under Title VII.

With respect to the Julie Smith and Rebecca Gustamente internal investigations, the district court found that there was no protected activity under the participation clause because plaintiff did not participate in an EEOC proceeding. Plaintiff argues on appeal that internal investigations by an employer's EEO compliance officer are protected activity under the

participation clause. This Court has not directly addressed the question of whether participation in internal investigations constitutes protected activity under the participation clause.[2] Other courts, however, have held that protected activity under the participation clause does not include participation in internal investigations. *See EEOC v. Total Sys. Servs., Inc.,* 221 F.3d 1171, 1174 (11th Cir.2000); *Brower v. Runyon,* 178 F.3d 1002, 1006 (8th Cir.1999); and *Vasconcelos v. Meese,* 907 F.2d 111, 113 (9th Cir.1990).

These decisions comport with the plain language of 42 U.S.C. § 2000e–3(a): "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing *under this subchapter.*" (Emphasis added.) They also are consistent with our decision in *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1313 (6th Cir.1989), where we stated that the purpose of the participation clause is "to protect access to the machinery available to seek redress for civil rights violations and to protect the operation of that machinery once it has been engaged." In *Booker,* we examined the participation clause under Title VII in interpreting similar provisions under the Michigan Elliott Larsen Civil Rights Act. We concluded that the language must be read literally and, therefore, the instigation of proceedings leading to the filing of a complaint or a charge, including a visit to a government agency to inquire about filing a charge, is a prerequisite to protection under the participation clause. *Id.*

It is not necessary, however, for us to decide whether an internal investigation is protected activity under the participation clause. To do so would not fully resolve the case because plaintiff's participation in the internal investigations and her meeting with the Governor's office may have been protected activity under the opposition clause. *See Booker,* 879 F.2d at 1313 n. 3; *Laughlin v. Metro. Wash. Airports Auth.,* 149 F.3d 253, 259 (4th Cir.1998). Whether plaintiff's participation in the Julie Smith and Rebecca Gustamente internal investigations is considered protected activity under the participation clause or the opposition clause, as discussed in the next section, plaintiff failed to show the requisite causal connection.

### 2. Opposition Claim.

 Under the opposition clause, the person opposing apparently discriminatory practices must have a good faith belief that the practice is unlawful. There is no qualification on who the individual doing the complaining may be or on who the party to whom the complaint is made. Thus, the fact that the plaintiff is a human resource director who may have a "contractual duty to voice such concerns" does not defeat a claim of retaliation; and the complaint may be made to a co-worker, a newspaper reporter, or anyone else. *Johnson,* 215 F.3d at 579–80.

 To defend against summary judgment, plaintiff was required to show the existence of a causal connection between her protected activities and her termination. Temporal proximity alone in the absence of other direct or compelling circumstantial evidence is generally not sufficient to support a finding of causal connection. *See Nguyen v. City of Cleveland,* 229 F.3d 559, 566 (6th Cir.2000). Cases addressing this issue have said that temporal proximity may establish a *prima facie* case only if the temporal proximity is "very

---

**2.** *See Davis v. Rich Prods. Corp.,* 2001 WL 392036, 11 Fed.Appx. (6th Cir. Apr. 9, 2001)

(unpublished disposition).

close." *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001). *See also, Hafford v. Seidner,* 183 F.3d 506, 515 (6th Cir.1999) (absent additional evidence, two to five months insufficient to create a triable issue of causation); *Cooper v. City of North Olmsted,* 795 F.2d 1265, 1272 (6th Cir. 1986) (four months insufficient to support an inference of retaliation).

 The district court found that plaintiff failed to show a causal connection between her alleged oppositional activity and her termination because the Gustamente matter had been resolved almost 11 months before plaintiff met with Armstrong. Plaintiff does not argue that there was a causal connection between her involvement with the internal investigations and her termination under the participation or the opposition clauses. She relies wholly on the temporal proximity of her meeting in the morning with Armstrong and her termination in the afternoon of November 9 to establish causation.[3] Defendants claim that there was no causal connection because Vasil decided to terminate plaintiff's employment before the meeting. Plaintiff argues that Vasil's statements should be discredited because in his deposition he could provide little detail about his reasons for terminating

her employment, and he did not ask that complaints about plaintiff's performance be made in writing. This is not relevant or responsive to the testimony of Vasil, Armstrong, and other employees that Vasil took steps to transfer plaintiff's duties to Demaree and asked Demaree to prepare paperwork to terminate plaintiff's employment *before* Vasil learned of the meeting with Armstrong. Employers need not suspend previously contemplated employment actions upon learning of protected activity by the employee. *See Alexander,* 121 S.Ct. at 1511 (no evidence of causality where employer planned to transfer employee before learning Title VII suit had been filed). Here, plaintiff offered no evidence, other than mere temporal proximity, that she was terminated because of the Armstrong meeting. Plaintiff has failed to raise a genuine issue of material fact of causation. Accordingly, she has failed to establish a *prima facie* case of retaliation under Title VII, and summary judgment in favor of defendants is appropriate.

## B. First Amendment

 A public employee has the constitutionally protected right to comment on matters of public concern without fear of reprisal from the government as employer.[4] *See Connick v. Myers,* 461 U.S. 138,

3. The issue of causation as it related to the internal investigations was briefed by the defendants before the district court and on appeal. Plaintiff, therefore, has not been denied the opportunity to respond, and it is appropriate for us to affirm summary judgment on this other ground. *See Carver v. Dennis,* 104 F.3d 847, 849 (6th Cir.1997). Plaintiff's involvement in the Gustamente sexual harassment investigation was resolved by November 1994, or at the latest February 1995; and the Julie Smith internal investigation was completed by August 1995. Plaintiff offered no evidence to show a causal connection between these investigations and her termination. In the absence of any other evidence of retaliatory conduct, the single fact that

plaintiff was discharged two to eleven months after she was involved in internal discrimination investigations does not establish a causal connection between protected activity and her termination.

4. Defendants argue that plaintiff's § 1983 action is precluded by Title VII. The district court did not address this argument. An employee may sue a public employer under both Title VII and § 1983 when the § 1983 violation rests on a claim of infringement of rights guaranteed by the Constitution. *Day v. Wayne County Bd. of Auditors,* 749 F.2d 1199, 1205 (6th Cir.1984). *See also, Johnson,* 215 F.3d at 583. Defendants also argue that plaintiff abandoned her First Amendment

147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). A public employee does not forfeit his protection against governmental abridgement of freedom of speech if he decides to express his views privately rather than publicly. *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 412, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).

■■■ To establish a § 1983 claim for violation of her right to free speech, plaintiff must first establish that her speech was protected because it was directed toward an issue of public concern, and her interest in making the speech outweighs the public employer's interest in promoting the efficiency of the public services. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 144 (6th Cir.1997). Matters only of personal interest are not afforded constitutional protection. Speech upon matters of public concern relates to "any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146. It is a question of law for the court to decide whether an employee's speech is a matter of public concern. *Johnson*, 215 F.3d at 583. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48.

■■■ Once she establishes that her speech is protected, plaintiff must present sufficient evidence to create a genuine issue that her speech caused her discharge. The speech must have been a substantial or motivating factor in defendants' decision to terminate her employment. *See Mt. Healthy*, 429 U.S. at 287. While causation ordinarily is a question of fact for the jury, a court may "nevertheless grant summary judgment on the issue of causation when warranted." *Bailey*, 106 F.3d at 145.

■■■ If the protected speech was a substantial or motivating factor in an employee's termination, the employer may present evidence that the employee would have been terminated in the absence of the protected speech. *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1186 (6th Cir.1995).

■■■ Plaintiff argues that her discussion with Armstrong about improper handling of discrimination claims was protected speech, and that she was terminated because of that speech in violation of the First Amendment. The district court found plaintiff's discussion with Armstrong was not protected speech because it was nothing more than the "quintessential employee beef: management has acted incompetently."

Allegations of racial and sexual discrimination are inherently matters of public concern even if they are tied to personal employment disputes. *See, Connick*, 461 U.S. at 148 n. 8 (allegations of racial discrimination by a public employer are a "matter inherently of public concern" discussing *Givhan*, 439 U.S. at 415–16); *Strouss v. Mich. Dept. of Corr.*, 250 F.3d 336, 346 n. 5 (6th Cir.2001) (sexual harassment is a matter of public concern); *Boger*, 950 F.2d at 322 (response to reporter's question about racial discrimination addressed matter of public concern); *Matulin v. Vill. of Lodi*, 862 F.2d 609, 612–13 (6th Cir.1988) (sexual and handicap discrimination in the workplace are matters of public concern). Whether the motive behind complaining of discrimination is civ-

claim by not briefing it in response to the motion for summary judgment. The district court, however, ruled on the First Amend-

ment claim, and plaintiff is not relying on facts or arguments that were not considered by the district court in making that ruling.

ic mindedness or an individual employee concern is not relevant. What is relevant is the subject of the complaint, discrimination, which is a matter "inherently of public concern." *Perry v. McGinnis*, 209 F.3d 597, 608 (6th Cir.2000).

While plaintiff offered somewhat differing accounts of her meeting with Armstrong, at one point in her deposition she testified that she informed Armstrong of a potential problem relating to the handling of discrimination complaints, that Vasil had told plaintiff not to be concerned because they were "just passing through," and that the Governor's office needed to do something about it. On this record, plaintiff presented sufficient evidence that her discussion with Armstrong was about the improper handling of sexual discrimination complaints, which is inherently a matter of public concern. The district court erred, therefore, in finding that the discussion with Armstrong was not protected speech under the First Amendment.

■ Defendants nonetheless are entitled to summary judgment. In order for plaintiff to prevail on her § 1983 claim, she must prove that her speech was a substantial or motivating factor in defendants' decision to terminate her employment. As discussed in the previous section, the evidence clearly shows that Vasil decided and took steps to effectuate plaintiff's termination before the meeting with Armstrong occurred and before he learned of the meeting. There being no material fact in dispute on causation, defendants were entitled to summary judgment on plaintiff's First Amendment claim.

**AFFIRMED.**